MATTER OF F—

In DEPORTATION Proceedings

A-10929296

*Decided by Board May 2, 1962*

Misrepresentation—Section 212(a)(19)—Materiality.

Willful concealment from consul of membership in Communist Party of Hungary held material. Claimed involuntariness of membership is no defense where respondent joined in 1945 when the Party was not yet in control of the government, belonged until 1956, was selected for officer training and entrusted with collection of dues. Respondent has failed to meet burden of establishing that under the true facts he was admissible or that had consul known the truth a proper refusal of the visa could not have been made. (Compare *Matter of S— and B—C—*, 9—436.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry—procured visa by fraud or willfully misrepresenting material fact (section 212(a)(19)).

**BEFORE THE BOARD**

**DISCUSSION:** The case is before us by certification. The special inquiry officer found the respondent deportable upon the ground stated above but granted voluntary departure. The appeal will be dismissed.

Respondent, a 38-year-old divorced male, a native and national of Hungary, now allegedly stateless, was admitted to the United States for permanent residence on December 8, 1956, upon presentation of a nonquota immigrant visa issued to him as a refugee. The Service charges that his visa was obtained by fraud because the respondent failed to reveal that he had been a member of the Communist Party from May 1945 until October 1956. The respondent admits that he did not furnish the information concerning his Communist Party membership but, claiming that membership was not voluntary, denies that the omission concerned a material matter.

The case must be decided under the principles set forth by the Attorney General in *Matter of S— and B—C—*, 4—436 (Oct. 2, 1961). The Attorney General stated that a misrepresentation must be material to sustain the charge that a visa had been obtained by fraud. He

627

held that a misrepresentation is material which concealed either a ground of inadmissibility or prevented an inquiry which might have resulted in a determination that a ground of inadmissibility existed, and that in arriving at a determination of the matter any uncertainty resulting from the alien's obstruction of the inquiry may be resolved against him.

The factual situation is based upon the testimony of the respondent. In February 1945, the respondent returned to Hungary from a labor camp where he had been held. He sought employment and was told by two individuals that everything was run by the Communist Party and if he wanted to get a job he had to join the Party. In May 1945, he joined the Party. Two months later he obtained employment; thereafter he did not bother with the Party or pay dues for two years. Then he was called before a Communist Party screening board which he told that he was not interested in Communist Party membership. The board threatened him; he thereupon continued his membership until 1956 when, the revolution having broken out, he left Hungary. In 1950, respondent entered the Hungarian Army for nine weeks of military training and then returned to his employment. Three months later he was called back to service as an officer candidate. Although the normal period of probation was six months, he was not made an officer for two years. As an officer, he handled a paymaster's functions. While an officer, he attempted to leave the Party but was unsuccessful. Upon discharge in 1953, he obtained employment as foreman of a group of leather engravers. At this time he tried to leave the Party because of the difficulties he had in obtaining wage benefits for the employees, but was advised that he would be harmed if his request for termination of membership were forwarded. A short while later he obtained employment in a state jewelry factory where he was told that because he had a bad record with the Party he would have to show that he was doing something for the Party; he was thereupon given the job of collecting Party dues. During the two-month period thereafter, he collected dues on two occasions. Between 1945 and 1956, he attended meetings of the Communist Party only when he could not escape attending; this happened 5 to 10 times. He did not read Communist Party literature although given such literature to read.

Respondent stated that when he applied for a visa he was asked to declare that he was never a member of the Communist Party, and that he failed to give the correct information. His failure is put on the grounds that he had become a member under duress, that he was not a Communist by ideology, and that he moreover was no longer a member when asked. Respondent admitted he had heard that persons who revealed to the consul that they were Communist Party members were given a special investigation which might have jeopardized the possibility of coming to the United States.

Two witnesses appeared on respondent's behalf. F— did not know the respondent in Hungary. He expressed the opinion that Communist Party membership was necessary if one were to remain in an advantageous employment position, and he related episodes, occurring in about 1952, in which persons who expressed the desire to leave the Party were punished severely. The witness was not a member of the Communist Party. Witness V— testified that he had known the respondent in Hungary, and that in 1945 there was a certain duress existing which caused individuals to join the Communist Party. The duress was occasioned by the fact that the Russian Army was deporting persons without documents to forced labor camps; many such persons joined the Party to save themselves from this fate. The witness testified that the respondent had discussed resignation from the Party with him on several occasions. He gave examples of the punishment suffered by persons who failed to join the Party or who opposed it, and he revealed that his own refusal to join the Party in 1952 resulted in the nationalization of his business. V— testified that in 1945 (when respondent joined) the Communists were not in control and that the country was run by a coalition government of several political parties.

The special inquiry officer held that respondent had not borne the burden of establishing that membership was involuntary since the Communists were not in control when respondent had joined and his testimony as to why he had joined was not indicative of compulsion. The special inquiry officer found that the respondent's actions concerning retention of membership did not indicate existence of duress and that his credibility was impaired by his admitted concealment of membership when he applied for a visa.[1]

Counsel submitted a brief, a supplemental brief, and he has been heard at oral argument. Counsel contends that membership in the Communist Party was solely for the purpose of obtaining employ-

---

[1] Deportation hearing was originally conducted by Special Inquiry Officer S— (June 30, and August 13, 1958) who ordered deportation on the ground stated above. Respondent appealed to the Board. Decision on the appeal was withheld pending the Attorney General's statement of the rule to be followed in misrepresentation cases. The rule was announced on October 2, 1961, in *Matter of S— and B—C—*, 9—436. The case was then ordered reopened for consideration under the Attorney General's ruling. Reopened hearing was held on November 21, 1961, before Special Inquiry Officer E—. Respondent was represented by the same two attorneys who had previously represented him. No objection to the substitution of special inquiry officers was made. The Service offered no new matter and asked no questions of the respondent. Counsel questioned respondent to bring the record up to date. Hearing was continued at counsel's request so that he could give further study to the Attorney General's decision. On December 5, 1961, counsel consented to the closing of the record and the entry of a decision on the basis of the existing record (unnumbered exhibit following last page of the hearing of November 21, 1961).

ment and that such a membership would not have made the alien ineligible for the issuance of a visa. He contends that since the alien was not ineligible for the issuance of a visa had the true facts been known, the visa was not one obtained by fraud. Counsel contends that the Service has not sustained the burden of establishing that the visa was one obtained by fraud. He points out that ·the Service, having become aware of the facts of the respondent's membership in the Communist Party before the order to show cause was issued on June 17, 1958, had ample opportunity to conduct whatever investigation it desired, and despite this opportunity failed to produce evidence establishing that membership was voluntary. He asks that the evidence be weighed according to the proof which it was in the power of one side to produce and the other to have contradicted. Counsel calls attention to the testimony of witness V— indicating that in 1945 persons were afraid of the Russians, although they were not the strongest political force in the country at that time. He contends there is much of a historical nature revealing that membership in the Communist Party in Hungary in 1948 could have been caused by fear for life or loss of property. Counsel contends that respondent's membership in the Communist Party was devoid of political implications and was, therefore, not "a meaningful" association which is required by *Rowoldt v. Perfetto*, 355 U.S. 115. He contends that since Special Inquiry Officer E— was unable to personally observe the conduct and demeanor of the witness on the stand, the Board is in as good a position as was the special inquiry officer of making a determination as to credibility of respondent on the basis of the bare record. Counsel asks that the Board therefore accept the respondent's testimony concerning the involuntary nature of his membership. Finally, counsel requests that proceedings be terminated under section 212(a)(28)(I) of the Act which concerns involuntary membership in the Communist Party or membership of one who has defected.

The Service representative argues that respondent's membership would have made him excludable had the true facts been stated; that in any event, a failure to disclose Communist Party membership cut off a line of inquiry which was material to the issue, placing upon the respondent the burden of establishing that had he told the truth a proper refusal of the visa would not have been made. He contends that the conduct of an adequate investigation involves not merely the availability of time in which to investigate but the existence of circumstances unchanged as much as possible from those existing at the time investigation could have been made. He points out that under the same conditions which existed when respondent joined, neither of the respondent's two witnesses found it necessary to join the Communist Party which in 1945 was not a

large organization. He points out that the law relating to the exclusion of aliens does not involve the issue of nominal membership and that, in any event, membership which existed for ten and a half years was a meaningful one, for not only was it of lasting duration but during its continuation respondent secured the benefits of membership not available to those who were not members of the Communist Party. The Service representative is of the belief that respondent is ineligible for whatever waiver is contained in section 212(a)(218)(I) of the Act because the willful failure to reveal the information deprived consul of an opportunity to make a finding in his favor.

Once the Government has established that a misrepresentation was made in the securing of a visa, the burden is upon the person making the misrepresentation to establish that under the true facts he is admissible or that had consul known the truth a proper refusal of the visa could not have been made. Considering the fact that the respondent joined the Communist Party when it was merely one of the parties struggling for power and was not yet in control of the government, considering the length of his membership, the fact that he was selected for officer training and was entrusted with responsibility of the collection of dues, we believe, despite his explanation as to all these events, consul could well have found that membership was voluntary, or at the minimum have found that such a grave doubt existed as to the involuntary nature of the membership that it was proper to refuse the issuance of a visa. Moreover, respondent's credibility must suffer from the fact that he concealed his membership when called upon to reveal it. If *Rowoldt* applies to membership in the Communist Party of a foreign country, we believe the test is met here. There was full knowledge that the group the respondent joined was the political organization known as the Communist Party (*Matter of Z—*, 7—28; *Matter of H—*, 8—122).

We take cognizance of the fact that some persons may have joined the Communist Party as early as 1945 because of fear of deportation; however, this does not help the respondent whose testimony indicates that the joining was for the purpose of securing employment. Others found it possible to obtain employment without being members of the Communist Party. The Communist Party was a small organization at the time. It was not in control of the country. There were active political organizations in opposition to it whose members were in important political posts in the country.

The fact that the Government has had an opportunity to conduct an investigation does not mean that it must make the investigation under all circumstances. Obviously, when the application for the visa was made, only a most limited investigation was possible. Under

631

such circumstances, consul would well have been justified in refusing a visa even if the limited investigation disclosed nothing to contradict the testimony of the applicant or even if no investigation were made. As of the time application for a visa was made, refusal of a visa was indicated. We must, therefore, conclude the respondent obtained his visa by fraud. The opportunity for making an investigation at the present is no better considering the length of time which has elapsed and the limited nature of an investigation which is presumably possible in a Communist-ruled country. The respondent should not be given the benefit of doubts created by his own willful, blameworthy actions.

Counsel's request for termination of proceedings under section 212(a)(28)(I) of the Act requires the finding that the respondent joined the Communist Party involuntarily or that he was a defector when he applied for the visa. We cannot make such finding on the record before us. The request must be denied.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.